IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MARIA ELBA LUERA,

        Plaintiff,

vs.                                                          Civ. No. 11-184 MCA/RHS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


**ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S ANALYSIS AND PROPOSED DISPOSITION**

       This is an appeal pursuant to 42 U.S.C. § 405(g) from a decision of the Commissioner of Social Security.  The case is before the Court upon Plaintiff Maria Elba Luera's Objections [Doc. 27] to the Magistrate Judge's Analysis and Proposed Disposition. [Doc. 26]  The Magistrate Judge recommended that the Court uphold the Commissioner's decision and dismiss this case with prejudice.  After a *de novo* review of the portions of the Magistrate Judge's Analysis and Proposed Disposition to which Plaintiff has objected, 28 U.S.C. § 636(b)(1)©, the Court adopts in part and rejects in part the Magistrate Judge's Analysis and Proposed Disposition.  For the reasons set out below, the Court reverses the Commissioner's decision, and grants Plaintiff's Motion to Reverse and Remand for Rehearing. [Doc. 22]


**DISCUSSION**

1.      **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), the Court's review of the ALJ's decision is limited to determining (1) whether the ALJ's factual findings are supported by substantial evidence in the record and (2) whether he applied the correct legal standards. *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

2.      **The Five-Step Sequential Analysis**

The Commissioner has adopted by regulations a five-step sequential process for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. Proceeding through the five steps, the ALJ determined *inter alia*, that Plaintiff had not engaged in substantial gainful activity since March 26, 2006; that she has severe impairments of degenerative disc disease of the lumbar spine and asthma; that she does not have an impairment or combination of impairments that meets a listed impairment; that she retains the residual functional capacity to perform light work, but due to her asthma should avoid exposure to extreme weather conditions and environmental hazards; that she is unable to perform her past relevant work; and that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform; and finally, that Plaintiff was not disabled. [A.R. 14-19] Plaintiff has not taken issue with the ALJ's determinations at the first three steps or with the ALJ's determination at step four[1] that she cannot perform her past relevant

---

[1] The Court of Appeals has held that step four of the sequential analysis consists of three "phases," the first phase consisting of a determination of the claimant's current physical-mental RFC, the second consisting of a determination of the physical and mental demands of the claimant's past relevant work, and the third consisting of a determination of whether the claimant's current RFC permits her to meet the demands of her past relevant work. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

work.

### 3. Step Five Issues

Plaintiff argues that the ALJ erred at step five by not inquiring into whether the vocational expert's opinion that Plaintiff could perform the job of information clerk was consistent with the *Dictionary of Occupational Titles*.[2] [Doc. 22 at 15-16; Doc. 27 at 7-8]. The ALJ recognized that because Plaintiff is subject to non-exertional limitations, the Medical-Vocational Guidelines cannot conclusively direct a finding of not disabled, and merely provide a framework for the step five determination. [A.R. 18] He therefore called a vocational expert to testify at Plaintiff's hearing to assist him in identifying jobs that Plaintiff can perform.  The ALJ asked the vocational expert to "give [Plaintiff] an example of a job which would be performed at the light exertional level and would not require exposure to extremes of temperature or to concentrations of environmental pollutants." [A.R. 28] In response, the vocational expert identified the job of "information clerk," observing that "[i]t's light.  It's unskilled.  There are 1,000,000 national and some 4,000 in New Mexico." [A.R. 28]

The *DOT* listing[3] for the job of information clerk specifies the following General Educational Development ("GED") levels:  reasoning at the 04 level,[4] math at the 02 level[5] and

---

[2]U.S. Dept. of Labor, *Dictionary of Occupational Titles* (4th ed. rev. 1991) (the"*DOT*").

[3]*DOT*, vol. I, at xvii-xxiii explains the parts of an occupational definition; *DOT*, vol. II, at 1009-14 explains the components of an occupational definition trailer, which include the three General Educational Development components–"Reasoning Development," "Mathematical Development," and "Language Development."

[4]The *DOT* describes a 04 reasoning level as:

Apply principles of rational systems to solve practical problems and deal with a

3

language at the 03 level.[6]  *DOT* at 207.  It also specifies a Specific Vocational Preparation level of 02.

"[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles . . . ."  *Haddock*, 196 F.3d at 1087.  The Court of Appeals expressly extended *Haddock* to non-exertional job requirements, such as reasoning levels, in *Hackett v.*

---

       variety of concrete variables in situations where only limited standardization
       exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic,
       or schedule form.

*DOT,* vol. II, at 1010.

[5]The *DOT* describes a 02 mathematics level as:

       Add, subtract, multiply, and divide all units of measure.  Perform the four
       operations with like common and decimal fractions.  Compute ratio, rate, and
       percent.  Draw and interpret bar graphs.  Perform arithmetic operations involving
       all American monetary units.

*DOT*, vol. II, at 1011.

[6]The DOT describes a 03 language level as:
Reading:
       Read a variety of novels, magazines, atlases, and encyclopedias.
       Read safety rules, instructions in the use and maintenance of shop tools
       and equipment, and methods and procedures in mechanical drawing and
       layout work.
Writing:
       Write reports and essays with proper format, punctuation, spelling, and
       grammar, using all parts of speech.
Speaking:
       Speak before an audience with poise, voice control, and confidence, using
       correct English and well-modulated voice.

*DOT*, vol. II, at 1011.

*Barnhart*, 395 F.3d 1168, 1174-76 (10th Cir. 2005).  Review of the record discloses that the ALJ's entire colloquy with the vocational expert regarding Plaintiff's ability to perform the job of information clerk consisted of the ALJ's request that the vocational expert identify a job limited to light work with certain environmental restrictions and the vocational expert's response.  The record does not reflect any questioning of the vocational expert by the ALJ directed to the GED levels required by the job of information clerk as set out in the *DOT*.[7]  The vocational expert characterized the job of information clerk as "unskilled," which corresponds to the *DOT*'s specification of a SVP of 2 for the job of information clerk.  *See* SSR 00-4p  (observing that "unskilled work corresponds to an SVP of 1-2").  The vocational expert's characterization of the job of information clerk as unskilled did not obviate separate consideration of the GED levels set out in the listing for information clerk, as SVP and GED levels are not duplicative.  *See Carter v. Barnhart*, No. Civ. 05-38-B-W, 2005 WL3263936 *3 (D. Me. Nov. 30, 2005) (distinguishing SVP and GED levels), *affirmed*,  2005 WL 3488288 (D. Me. Dec. 19, 2005).  What is notably missing from the ALJ's decision is any discussion of evidence supporting a conclusion that Plaintiff is capable of meeting the GED requirements of the job of information clerk.  At step five of the sequential analysis the Commissioner bears the burden of proof;  Plaintiff had no

---

[7]The ALJ found at step two that Plaintiff  "is able to maintain sustained attention and concentration well enough to complete simple tasks and remember and carry out simple instructions."   This is the only affirmative finding concerning Plaintiff's intellectual ability made by the ALJ.  If this finding was intended as an RFC determination of Plaintiff's *maximum* intellectual ability, 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations"), it would appear to be inconsistent with the level 04 reasoning requirement of the DOT's listing for the job of information clerk. *See Hackett*, 395 F.3d at 1176.

burden to produce or develop vocational evidence.[8] *Haddock*, 196 F.3d at 1088. Thus, this case must be remanded so that the Commissioner can determine whether Plaintiff can meet the GED requirements of the job of information clerk. *See Porch v. Chater*, 115 F.3d 567, 571-72 (8th Cir. 1997) (observing that jobs identified by VE required more general education that claimant's past work; holding that the VE's testimony did not constitute substantial evidence of other jobs in the national economy that claimant could perform). If the Commissioner determines that Plaintiff is unable to meet the GED requirements of the job of information clerk, he should endeavor, with the assistance of a vocational expert, to identify one or more other jobs available in significant numbers in the regional or national economy whose requirements Plaintiff is capable of meeting.

In a related issue, Plaintiff argues that the ALJ posed an incomplete question to the vocational expert. [Doc. 22 at 15; Doc. 27 at 5-6] The Court agrees. At the fifth step of the sequential analysis, the Commissioner "consider[s] [the claimant's] residual functional capacity and [the claimant's] age, education, and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. §§ 404.1420(a)(v); 404.920(a)(v). In his decision, the ALJ

---

[8] The GED requirements "embrace those aspects of *education* (formal and informal) which are required of the worker for satisfactory job performance." *DOT*, vol. II at 1009 (emphasis added). Plaintiff's formal education ended in 1979, with Plaintiff having completed the ninth grade. [A.R. 126] Even if Plaintiff retains her full mental RFC, given Plaintiff's limited formal education and history of largely unskilled work, it would be improper to simply assume that she could reason at the 04 level, perform math at the 02 level, and use language at the 03 level. *See Haddock v. Astrue*, Civil Action No. 09-cv-01922-LTB, 2010 WL 2197403 (D. Colo. May 28, 2010) (holding that it is reversible error for ALJ to pose hypothetical question to VE in absence of substantial evidence that the claimant can satisfy the GED levels assumed in the hypothetical question). Plaintiff did not bear the burden of proving that she cannot perform other jobs; rather, the Commissioner bore the burden of proving that she can. *See Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).

states that he "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." [A.R. 18] However, the ALJ's recollection is not borne out by the transcript of the hearing, which as noted above establishes that the ALJ merely asked the vocational expert to "give [Plaintiff] an example of a job which would be performed at the light exertional level and would not require exposure to extremes of temperature or to concentrations of environmental pollutants." [A.R. 28] The Court assumes that the vocational expert answered the question actually posed to him, which was not tied to Plaintiff's age, education, and work experience.[9]  Given the math and language skills required by the job of information clerk and the facts that Plaintiff has a limited formal education which ended 25 years before the onset of her impairments, the omission of information about Plaintiff's age, education, and work experience cannot be considered harmless. *See* 20 CFR 404.1864(b) ("Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work.").  On remand, the ALJ should insure that any hypothetical questions include Plaintiff's pertinent vocational characteristics.

    **4.**       **Step Four Issues**

    The ALJ found that Plaintiff's degenerative disc disease of the lumbar spine could

---

[9]As Plaintiff points out, [Doc. 22 at 15] the transcript establishes that the ALJ had not inquired into Plaintiff's work history or education prior to questioning the vocational expert. This circumstance  materially distinguishes Plaintiff's case from cases such as *Welch v. Chater*, 1996 WL 563856 (10th Cir. Sept. 27, 1996), where the Court of Appeals assumed that the vocational expert's responses to the ALJ's hypothetical questions incorporated "such background information already testified to by plaintiff."

reasonably be expected to produce the chronic severe low back pain described by Plaintiff. [A.R. 16] "When the existence of a medically determinable physical or mental impairment[] that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptom[] must be evaluated to determine the extent to which the symptom[] affect[s] the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom[] and its functional effects." SSR 96-p, 1996 WL 374186 *1. "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id.* at *4. The ALJ's credibility analysis is found at pages 5 and 6 of his decision. [A.R. 16-17] Since the credibility of Plaintiff's complaints of disabling[10] pain will remain a critical issue on remand, the Court identifies the following issues, which are of particular concern to the Court.

First, Plaintiff testified that a consulting physician to whom Plaintiff was referred in September 2007 did not physically examine Plaintiff or perform any tests other than an eye examination. [A.R. at 36-37] This is a serious accusation. Plaintiff did not complain about any other physician or health care provider. The Court notes that the portion of the report of this consultative examination under the heading "Musculoskeletal Exam" refers to *a different patient* (Ms. Cain). [A.R. at 312] The misidentification of the patient is particularly troubling because back pain is one of Plaintiff's impairments, and her back pain would have been covered under the

---

[10]At the hearing before the ALJ, the vocational expert agreed in response to a question posed by the ALJ that Plaintiff's testimony that her pain required her to lie down with her feet up two to three times a day was incompatible with meaningful work activity. [A.R. 29]

heading where the misidentification appears. Furthermore, the ALJ accorded "[s]ignificant weight" [A.R. 17] to the conclusions of two non-examining State Agency physicians who relied on the report of the challenged consultative examination in reaching their own conclusions of non-disability. [A.R. at 327; 343] If Plaintiff's complaint regarding the allegedly cursory and incomplete consultant examination is substantiated, the reliability of the opinions of three physicians upon whom the ALJ relied in rejecting Plaintiff's claim of disabling pain would be seriously called into question, very likely considerably altering the ALJ's credibility analysis. On remand, the Commissioner should expressly address Plaintiff's testimony that the September 2007 consultative examination was cursory and incomplete, explaining his reasons for accepting or rejecting Plaintiff's testimony describing the 2007 September examination.

Second, at the hearing before the ALJ, Plaintiff testified to the limitations that her back pain imposes on her daily activities. [A.R. at 28-29] Plaintiff testified that her house work is interrupted two or three times a day by pain that requires her to lie down with her feet elevated for up to an hour at a time, [A.R. at 28-29] that her companion with whom she lives "helps me comb my hair when I can't stand to comb it," helps her put on shoes and socks, helps her dress two or three times a week, and helps her get out of the bathtub. [A.R. 38] The Court is concerned that the ALJ's statement that "[Plaintiff] testified at the hearing that although she requires rest breaks throughout the day, she is able to perform daily hygiene activities, household chores and cooking and shopping with no assistance" [A.R. at 15] unduly minimizes the limitations to which Plaintiff testified. *Cf. Krauser v. Astrue*, 638 F.3d 1324, 1332-33 (10th Cir. 2011) (criticizing ALJ's treatment of evidence of claimant's daily activities); *Thompson v Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (observing that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain");

9

*Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) ("[Claimant] testified that he cannot sit, stand, walk, or drive a car for more than a brief interval, that he does no yard work and only minor house chores, mostly to care for himself. This lifestyle does not contradict a claim of disabling pain."). Moreover, even if the ALJ disbelieved Plaintiff's testimony, his disbelief would not constitute affirmative proof that Plaintiff is capable of a full range of daily activities despite her back pain. *See Bose Corp. v. Consumers Union of United States*, 466 U.S. 485, 512 (1984) (observing that discredited testimony is not a sufficient basis for drawing a contrary conclusion).

Third, the Court notes that the ALJ relied on evidence of "symptom magnification" in his credibility analysis. Dr. Ross, for example, observed positive Waddell's signs and noted "significant symptom magnification," concluding that Plaintiff's symptom magnification "might affect prognosis/outcome and response to treatment." [A.R. 236, 242]. Waddell's signs merely indicate that there may be a psychological component to the patient's organic pain; they do not establish that the patient's pain is not genuine. Jules M. Rothstein, Editor's Note: *Unnecessary Adversaries*, 77 Physical Therapy 352-53 (April 1997) (observing that "[s]ome people erroneously equate symptom magnification with malingering or use a positive finding for 'nonorganic signs' to suggest an absence of pain" and that "[p]ersons with symptom magnification may simultaneously have treatable physical pathologies, and even if they do not, the underlying reasons for the magnification warrant investigation and possible treatment by the health care team"); *see generally* Samuel D. Hodge, Jr. and Nicole Marie Saitta, *What Does It Mean when a Physician Reports that a Patient Exhibits Waddell's Signs?*, 16 Mich. St. J. Med. & L. 143 (2012) (discussing use and misuse of Waddell's signs in medico-legal contexts). Our

Court of Appeals has recognized that positive Waddell's signs "are indications that a patient has nonorganic pain. *They are used to identify patients who may require detailed psychological assessment*." *Wall v. Astrue*, 561 F.3d 1048, 1056 n.10 (10th Cir. 2009) (emphasis added). "The question whether the experience [of pain] is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience . . . more pain that she actually feels." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Properly understood, the Waddell's signs noted by Dr. Ross suggest the need for further inquiry into nonorganic sources of pain, rather than dismissal of Plaintiff's complaints as not genuine.

  Fourth, in evaluating the credibility of Plaintiff's complaints of severe pain, the ALJ failed to expressly consider pervasive evidence that Plaintiff has consistently complained of severe back pain for which her medical providers have prescribed pain medication and muscle relaxants. The ALJ erred by failing to expressly consider this evidence in evaluating the credibility of Plaintiff allegations of pain. *Sitsler v. Astrue*, 410 Fed. Appx. 112, 117 (10th Cir. 2011) (citing and quoting *Hardman v. Barnhart*, 362 F.3d 676, 680(10th Cir. 2004)). In revisiting the issue of the credibility of Plaintiff's complaints of disabling pain on remand, the Commissioner should give express consideration to evidence that Plaintiff has consistently complained of severe pain for which she has been prescribed painkillers and muscle relaxants. *Cf. Carradine*, 360 F.3d at 755 (noting "the improbability that [claimant] is a good enough actress to fool a host of doctors and emergency-room personnel into thinking she suffers extreme pain; and the (perhaps lesser) improbability that this host of medical workers would prescribe drugs and other treatment for her it they thought she were faking her symptoms").

**CONCLUSION**

The Magistrate Judge's Analysis and Proposed Disposition is adopted to the extent it recommends affirmance of the ALJ's decision at steps one through three of the sequential analysis and the ALJ's determination at step four that Plaintiff cannot return to her past work. The Magistrate Judge's Analysis and Proposed Disposition is rejected to the extent it recommends affirmance of the ALJ's determination that Plaintiff retains the residual functional capacity for light work subject only to asthma-related environmental restrictions and the ALJ's determination at step five of the sequential analysis, that Plaintiff is not disabled, all as set forth in this opinion.

**IT IS THEREFORE HEREBY ORDERED** that the Magistrate Judge's Analysis and Proposed Disposition [Doc. 26] is **adopted in part and rejected in part**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing [Doc. 22] is **granted**; the October 29, 2009 Decision of the Commissioner is **reversed**; and this case is **remanded** to the Commissioner for further proceedings consistent with this Order.

SO ORDERED this 31st day of December, 2012.

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE